We'll move to our third case this morning. Ronald Gaines v. Thomas J. Dart Mr. Gaines. Mr. Casper. Good morning, Your Honors. May it please the Court. I'm here arguing on behalf of Plaintiff Appellant Ronald Gaines. There's two primary issues in the brief, and I'm going to focus on the cat's paw issue to start out. The Plaintiff submits that the District Court erred in granting summary judgment because Plaintiff presented enough evidence for a jury to determine whether or not Adriana Morales, the decision maker in the termination, was influenced by Defendant Carmen Ruffin, who harbored the anti-age animus toward Gaines. We submit that as a matter of the Shandlemeyers-Bartels v. Chicago Park District case and the Vega v. Chicago Park District case, that a jury should have been allowed to decide the cat's paw issue. Again, that is whether Morales was the cat's paw of Ruffin in this case. To start out, we know from Morales' deposition that the sole thing she reviewed was the OPR file in this case in coming to her determination to terminate Gaines. So to understand the lack of independence between Morales and the ageist Ruffin here, we need to analyze what's in that OPR file specifically. And the OPR file is what? That is the Office of Professional Review Internal Affairs Investigation file that was compiled against Gaines that decision maker Morales reviewed and used to justify the termination. And Ruffin wasn't the investigator. Ruffin was not the investigator. The investigator was a man named Eamon Zabadne. And let's walk through the different parts of this OPR file that Zabadne compiled and discuss the connection to Ruffin. First of all, there are some interviews of individuals that Zabadne interviewed in his OPR file. However, when we review these interviews, most of them have nothing whatsoever to do with Gaines or Gaines' alleged misconduct. Let me start with the easy ones. Zabadne interviewed Officer Messina. All Messina talked about was his perceptions of Gaines' workplace injury, which had nothing to do with anything. So Officer Messina's interview is irrelevant, but it's in the OPR file. Zabadne interviewed Officer Folker. Again, Folker only talked about Gaines' workplace injury, which had nothing to do with any of the alleged misconduct. It's in there. It's irrelevant. Well, I thought the whole issue of the workplace injury and medical reports and so forth had something to do with his explanation for why he was AWOL. And so it was relevant. It's not true that it had nothing to do with the misconduct. The misconduct was that he was AWOL. The alleged misconduct was that he was AWOL during his shift, but those two particular officers that were interviewed, they didn't give any relevant information beyond just information about their perceptions of whether or not he had a workplace injury. So it wasn't connected at all to the AWOL allegation is what I'm saying. Well, the investigator was not on a frolicking detour in doing those interviews. He was trying to get to the bottom of what I understood to be his defense, that he was getting medical records when he was AWOL so that he could justify his medical injury. That was his narrative? It was a frolicking detour. Those particular officers had no relevant information about whether or not Gaines was AWOL or not on August 13, 2024. Those were a frolicking detour. They were irrelevant make-way interviews that yielded no relevant evidence. Well, it had to do with his excuse. But neither one of them had any information about whether Gaines was AWOL on August 13, and that's why they were irrelevant. Can you connect the dots, though? Are you trying to tell us that Ruffin dictated these irrelevant interviews? What's the connection here? Skip to the point that you're making about these interviews. Well, what I'm trying to say is that Morales reviewed this OPR file, and it was a bunch of either irrelevant make-way that had no bearing on the AWOL allegation, such as these interviews, or it was information suggested by Ruffin. And let me talk about that. There was, for example, the daily activity reports that Zabodny collected. He gets those from Ruffin. There was the allegation that Gaines was AWOL. He gets that to start from Ruffin. That's Ruffin who starts the ball rolling on that allegation. There's the GPS records. He doesn't get those from Ruffin, but she suggests that he get the GPS records. Stop there. Sorry. Isn't that the end of your cat's paw theory? Doesn't that defeat it right there? I mean, let's say you're right on the OPR investigation and the interviews. How do you deal with the GPS records, the surveillance logs, the daily activity reports? Remember, you have to prove that Ruffins are established, that Ruffin's interview was not independent. Yes. How do you deal with that stuff? Because, Your Honor, between Zabodny's deposition and reviewing the GPS records themselves, they don't establish that he was AWOL at all. Okay, so that's fine. Ruffin's wrong. Ruffin's wrong. Ruffin's wrong. How does that establish a cat's paw theory? If Ruffin can review information and come to the wrong conclusion, that does not amount to a constitutional violation. Or does it? Because, Your Honor, Morales, who was the decision-maker, influenced by Ruffin, as we say, Morales said that she was swayed that the OPR file showed that Gaines visited his boathouse. So what? Because it's false. That is false. So what? There's this other evidence that she looked at as well in making the decision. Doesn't that defeat your cat's paw theory? Maybe I'm wrong. Okay, go ahead. Explain why. Because I break down every piece of evidence in the brief here that's in that OPR file. None of it establishes AWOL. All of it, almost all of it, comes or was suggested by Ruffin. All of it. So, yes, it's true Zabodny collected this information. But like the GPS records, there's not even a GPS record in the record for August 13th. That's the day he's allegedly AWOL. There's no GPS record for August 13th. There's the daily activity reports in the OPR file. There's no daily activity report for August 13th. And this is the date, mind you, that Ruffin says Gaines was AWOL, August 13th. If that's such a big deal, Your Honors, why is there no GPS record from the 13th or daily activity report from the 13th? It's not in there. And that's why when Morales said she was swayed that the OPR file showed Gaines visited a boathouse, where does the boathouse allegation come from? It's not shown in the GPS records. It's not shown in the daily activity reports. Ruffin suggested it. She suggests it in her interview with Zabodny. She says, I'm summarizing here. She says she basically believes Gaines visited a boathouse while on duty. The only thing in the OPR file about that is Ruffin's statement. So in other words, Zabodny doesn't collect any evidence on it. He doesn't show in the GPS records where that is shown. And there's nothing else in there except Ruffin's say-so, and that's the cat's paw. Because Morales said in her deposition, this is docket 136 of page 17. Morales says she was influenced by that boathouse allegation. Let's say you're right. What's the evidence that your client was supposed to be at those locations during work hours? The evidence that my client was supposed to be at those locations. He wasn't at work. He wasn't. I think, I'm not sure that your characterization of the record on the cross-reference of the GPS, the location of the boathouse, and what, I don't know how to say his name, Zabodny. What Zabodny did during the investigation, I think your characterization of what happened is disputed. But is there no dispute that your client was, there's evidence that your client was somewhere he was not supposed to be during the workday?  There is no evidence of that. There's no evidence of that. And Zabodny. Didn't Zabodny testify to that during his deposition? No. There are issues in his deposition where he couldn't remember certain details. I know that. But doesn't Zabodny at least establish that there was evidence that he reviewed that established your client was places where he should not have been during the workday? Which, by the way, is relevant to the medical excuse. Your Honor, there actually is not that evidence in the record. Zabodny was asked specifically, where in these GPS records does it show where Gaines is a spot he should not be? And Zabodny said he couldn't identify it. Well, I thought he said he couldn't remember. It was stronger than that. He said he could not identify it. We went over that issue several times with him. I even excerpted in the brief, there's an excerpt from the deposition. This is just one excerpt on page 74. The question was, did you ever discover if this address was connected to Ronald Gaines in any way? In that instance, he said, I don't recall. But then we asked him similar questions about the other two addresses at pages 78 and 79 in his death. And he said the same thing. But hold on. Then if you go back and you try to understand comparing the daily activity reports with the GPS records, where do these show on themselves that Gaines was a spot he shouldn't have been? They don't. And I walked through this in the brief. And furthermore, Your Honors, let's look at this is page 216 of the OPR file is this GPS record printout. It shows absolutely nothing. On its face, it's just a bunch of dots on roadways. This shows nothing about Gaines being somewhere where he shouldn't have been. And that's why we say, ultimately, breaking down every piece of evidence that is in this OPR file, it is a make-wage sham. And Morales was ultimately influenced by Ruffin filing that OPR complaint register, Ruffin suggesting the boathouse allegation, and doing nothing else beyond reviewing what was in that OPR file. And that's why there's enough evidence here, Your Honors, for the Katzbrock issue to have gone to a jury, just like in Shandlemeyer Bartels, just like in Vega v. Chicago Park District. Now, admittedly, we can all argue amongst ourselves, well, was Zabodny's investigation, you know, does it create too much separation between Ruffin and Morales? Or, you know, is Ruffin too remote from Morales? But remember, this should be a jury issue. And Plaintiff was entitled to positive inferences about that chain at the summary judgment stage. And we submit, and I come back to this again, and I have to emphasize it. When Morales said that the OPR file showed he visited the boathouse, and the only place in the file where that allegation comes up is Ruffin's interview, that goes to Shandlemeyer Bartels' statement that if you can show that the decision-maker was fed false information by the biased person, that's enough for a Katzbrock case to get to a jury. And that's what we're arguing about this Katzbrock issue. Lastly, I know we've been going on the Katzbrock issue for a minute here. I want to emphasize about the other part in the case, which is, is there enough circumstantial evidence that Ruffin was motivated by age-based animus? And there's five circumstantial factors discussed in the brief. I won't hit all of them, but I just want to submit, Your Honors, we submitted six affidavits from other employees in the work unit, all attesting specifically, not conclusively, to different facts why, in their view, Ruffin was motivated by age-based animus. Rare is the employment discrimination case where there's six affidavits from other people in the work unit attesting to age discrimination. And we submit that that alone, along with the other four circumstantial pieces of evidence, should have been enough for the court to deny summary judgment on that causation issue as well. Excuse me, I see I'm going into my rebuttal time. Are there any other issues at this time? I'd like to reserve the remainder of my time. Thank you. That's fine. Who's guest? Good morning. May it please the Court, Assistant State's Attorney, Rebecca Guest, on behalf of Thomas Dart, Sheriff of Cook County, Carmen Ruffin in Cook County. This is a clear-cut case. The appellant, Ronald Gaines, was terminated from the Cook County Sheriff's Office for violating the Sheriff's rules and regulations when he handled personal business in his uniform in the Sheriff's Office vehicle while on duty, failed to supervise his staff, and on at least five occasions visited his personal boathouse and three other boathouses during working hours. He was not terminated due to his age. There are three reasons why this Court should affirm the District Court's grant of summary judgment. One, Ruffin did not possess age-based animus or cause Gaines's termination. Two, Gaines's job performance did not meet the Sheriff's legitimate expectations. And three, Gaines failed to identify a similarly situated individual who was treated more favorably. I want to start with speaking about Gaines's job performance briefly, which is where we spent a lot of the opening. The evidence shows that Adriana Morales, who conducted an independent command channel review after the Office of Professional Review did a complete investigation, which included multiple interviews and looked at a number of documents, medical records, emails, and looked at GPS records. And the record is clear that investigators at Bodna compared GPS records with Google Maps. And they showed that he was not in locations where his electronic monitoring participants were located or where his staff was located. That is not where he was. He was at other locations, his house, his boathouse, other boathouses, during working hours. It was plaintiff's burden to provide additional information in this case, and the record is clear. There is no other information. And in fact, the plaintiff was not even interviewed because he decided not to show up for his interview. And investigators at Bodna contacted him a number more times, and he did not appear. So Gaines's age discrimination in the Employment Act and Illinois Human Rights Act age discrimination claims fail under both Ortiz and McDonnell Douglas because plaintiff has not come forward with any evidence of age discrimination. As plaintiff was explaining, he is relying on the cat's paw theory in this case. But there is no evidence that Ruffin proximately caused his termination. To show age-based discrimination under the cat's paw theory, plaintiff must present evidence that the biased subordinate harbored discriminatory animus against him and that the subordinate scheme proximately caused the adverse employment action. There is no evidence that Ruffin had discriminatory animus. Gaines points to four remarks that Ruffin allegedly made, but these comments are irrelevant because Ruffin was not the decision-maker. Morales was. And Ruffin's alleged comments did not have anything to do with Morales's decision to terminate plaintiff. Gaines also attempts to rely on Ruffin's alleged mistreatment of older officers and treating younger officers more favorably, but that also misses the point because Morales determined that Gaines should be discharged, not Ruffin. Ruffin's supposed age bias cannot be imputed to Morales without any evidence that Ruffin acted as a cat's paw. Can I ask you about the district court's opinion? Yes. Where it cites the standard for comparators, which is something we haven't talked a whole lot about this morning.  The district court sure does seem to cite the standard incorrectly. It says that Gaines can't use anybody over 40, which isn't quite right. So why doesn't that compel a remand? So there are two ways that Mr. Gaines was attempting to use similarly situated information in his case. It was under both Ortiz and under McDonnell Douglas. So under McDonnell Douglas, he would need a similarly situated comparator under 40 who was treated more favorably. So in this situation, it would be— I'm talking about the O'Connor point that Mr. Gaines is raising in the briefs. Sure. The O'Connor case does not say—that's not what the O'Connor case really says. It held that McDonnell Douglas does not require a plaintiff to prove he was replaced by someone outside the protected class when you're looking under the McDonnell Douglas prima facie case. And that—so it does not overturn McDonnell Douglas is basically what plaintiff is arguing here. And that's why that case does not help the plaintiff. And similarly situated information is also part of the evidence under Ortiz, but there is no evidence here because there is no evidence in the record that any individuals under 40 who were AWOL, who were at locations where they were not supposed to be during working hours, were not fired. And in fact, all of the proposed comparators plaintiff has provided are over 40. None are younger. He did not come forward with one person younger because they do not exist. So similarly, plaintiff does not meet the analysis under McDonnell Douglas. Plaintiff was not meeting the sheriff's legitimate expectations. He was violating the sheriff's office policies and procedures. When he took advantage of his trusted supervisory position, by using time he was paid by the sheriff's office to conduct personal business. And when he was at the various locations instead of doing his job. And the Cook County Sheriff's Office reached these conclusions after following its normal investigative process, which included interviewing five witnesses, attempting to interview plaintiff who did not appear, and reviewing the GPS and proxy records along with multiple other documents. And Gaines, again, he failed to identify any comparators. Plaintiff's Section 1983 Equal Protection Claim fails for the same reasons. Considering the record as a whole, no rational jury could conclude that Gaines was terminated due to his age. And because Gaines' claims fell on the merits, there should be no liability attached to Cook County. And unless there are any more questions, I ask that the court affirm the district court's grant of summary judgment. Thank you. Thank you. Mr. Casper. I talk myself out of breath on direct, so I just want to make two short points. Number one, with respect to the O'Connor decision, I agree with your Honor's interpretation of it, that it says plaintiff doesn't have to propose someone under 40 as part of the prima facie case. Moreover, though, plaintiff was not using these six affidavits as comparators. He was using them as one of the six pieces of evidence in the circumstantial evidence pile to show age-based animus. And that use of those six other employees as circumstantial evidence was overlooked by the district court's decision below. Last point. During the argument, counsel mentioned that there's evidence that Gaines was at his boathouse. Due respect to counsel, that is not in this record. There's not one iota of evidence in this record that Gaines ever visited a boathouse, except for Ruffin's say-so that started that allegation and caused Morales to say she was influenced by it. Let's fire her. For these reasons, we'd ask respectfully that this court reverse summary judgment grant in the district court and remand for a trial. If there's no further questions, I'll stop. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.